IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHARON DUFFEE,

    Plaintiff,

v.                                                                             No. 1:23-cv-00536-MIS-LF

T-MOBILE USA INC.,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS MATTER** is before the Court on Defendant T-Mobile USA Inc.'s Motion to Dismiss Plaintiff Sharon Duffee's Complaint, ECF No. 9, and Brief in Support thereof, ECF No. 10, filed on June 29, 2023. Plaintiff filed a Response on July 10, 2023, ECF No. 15, to which Defendant filed a Reply on July 21, 2023, ECF No. 18. Upon due consideration of the parties' submissions, the record, and the relevant law, the Court will **GRANT** the motion.

### I.     BACKGROUND[1]

Plaintiff's Complaint alleges the following: Plaintiff was employed by Defendant at Defendant's call center in Albuquerque, New Mexico for approximately 15 years before being terminated in June of 2022.[2] ECF No. 1-2, Ex. B ("Complaint") ¶ 17. Plaintiff suffers from a "Factor II mutation," which impacts her immune system and normal cell growth and limits her ability to perform daily tasks. *Id.* ¶ 18. Defendant knew of Plaintiff's condition. *Id.* ¶ 19.

---

[1] The Court accepts as true all well-pleaded factual allegations in Plaintiff's Complaint and draws all reasonable inferences in Plaintiff's favor for the purposes of this Motion.

[2] Plaintiff's Complaint identifies the period of Plaintiff's employment only as "the last 15 years." ECF No. 1-2, Ex. B ("Complaint") ¶ 17. As Plaintiff was terminated by Defendant in June of 2022 and the Complaint was filed in May of 2023, Plaintiff's exact dates of employment are impossible to determine from the pleadings.

In late 2021, Defendant informed its employees that they would be required to "return"[3] to the call center at least one day per week beginning in 2022. *Id.* ¶ 20. As a condition of returning to work, employees were required to receive the COVID-19 vaccine. *Id.*

Plaintiff had previously asked her primary care physician, Dr. Gina Cardona, about the possibility of receiving the COVID-19 vaccine given her medical condition. *Id.* ¶ 21. Dr. Cardona expressed concerns that Plaintiff would be at risk of serious side effects, to include death, were she to receive the vaccine. *Id.*

Plaintiff submitted a COVID-19 Vaccination Exemption Request Questionnaire to Defendant on March 25, 2022. *Id.* ¶ 23. On that Questionnaire, Dr. Cardona indicated that Plaintiff did not suffer from an impairment limiting a major life activity. *Id.* ¶ 24. On the same date, Plaintiff e-mailed Defendant, through counsel, that she was unable to receive the vaccine, and requested that T-Mobile engage in an interactive process to establish accommodations for Plaintiff. *Id.* ¶¶ 27-28.

Defendant denied Plaintiff's exemption request. *Id.* ¶ 25. Plaintiff then visited with Dr. Cardona, who updated Plaintiff's Questionnaire to now note that Plaintiff did suffer from a condition impairing a major life activity. *Id.* ¶ 26.

On April 1, 2022, Defendant responded to Plaintiff's e-mail, noting that Plaintiff's updated Questionnaire was under review and requesting that an independent physician be allowed to speak with Dr. Cardona. *Id.* ¶¶ 30-31. The independent physician and Dr. Cardona spoke on April 21, 2022, and Dr. Cardona told the independent physician that she did not believe

---

[3] Despite using the word "return," the Complaint provides no background information regarding Defendant's shift to a remote work policy or the timing of that shift. This Court, however, notes the occurrence of the COVID-19 pandemic in 2020 and the concurrent, widespread movement to allow remote work during the early stages of the pandemic.

Plaintiff should receive the vaccine. *Id.* ¶ 32. The independent physician told Defendant that Plaintiff did not meet various guidelines for receiving a vaccine exemption. *Id.* ¶ 33.

On April 28, 2022, Defendant sent an e-mail informing Plaintiff that her request was being denied and that she had to comply with Defendant's vaccine requirements. *Id.* ¶ 34. When Plaintiff reported to work on June 1, 2022, she was terminated for having not been vaccinated in accordance with Defendant's policy. *Id.* ¶ 38.

On June 22, 2022, Plaintiff submitted a formal Charge of Discrimination to both the Equal Employment Opportunity Commission (EEOC) and the New Mexico Department of Workforce Solutions, relaying the allegations that serve as the basis of this Complaint. *Id.* ¶ 8. On March 6, 2023, the State of New Mexico Human Rights Bureau issued a Determination of No Probable Cause on Plaintiff's Charge of Discrimination. *Id.* ¶ 10. On March 22, 2023, the EEOC issued a Determination and Notice of Rights on Plaintiff's Charge of Discrimination.[4] *Id.* ¶ 11.

On May 11, 2023, Plaintiff filed the underlying Complaint in New Mexico state court, alleging Defendant violated both the New Mexico Human Rights Act and the federal Americans with Disabilities Act. *See id.* at 1. Defendant timely removed the Complaint to federal court on June 22, 2023, pursuant to 28 U.S.C. §§ 1331, 1332, and 1441(a) and (c). ECF No. 1 at 1.

## II.   JURISDICTION

This court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331. Plaintiff's state law claims also arise from the same set of facts as do the

---

[4] Plaintiff's Complaint does not identify the nature of the EEOC's Determination or Notice of Rights with specificity. Construed in the light most favorable to Plaintiff, Plaintiff appears to have received Notice of the Right to Sue. Compl. at ¶¶ 21-22.

federal claims and form part of the same case or controversy. Supplemental jurisdiction over Plaintiff's state law claims is thus proper under 28 U.S.C. § 1367(a).

The Court also has original jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(a). Although Plaintiff's Complaint confusingly identifies Defendant as both a "foreign corporation" and one with its "principal place of business in New Mexico." *id*. ¶¶ 2-3, Defendant's uncontroverted Affidavit identifies Defendant as "a Delaware corporation with its principal place of business in Bellevue, Washington." ECF No. 1-2, Ex. C at 1. Plaintiff is a citizen of New Mexico. ECF No. 1 ¶ 10. Therefore, the Court finds that the parties are diverse.

As to the amount in controversy, New Mexico state law provides that complaints for damages "shall not contain . . . any specific monetary amount" unless such amount is a necessary element of the claim. N.M. R. Civ. P. 1-008(A)(3) (2007). Plaintiff's Complaint, however, seeks a bevy of damages from Defendant, to include loss of earnings, damages for emotional distress, statutory damages, attorney's fees, and punitive damages. Taken in sum, the Court finds the amount in controversy exceeds the $75,000 threshold required to establish diversity jurisdiction.

### III.   STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 10 at 1. To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible when the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While reviewing courts "must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*.

The Court's review is also limited by the scope of the pleadings before it: "[t]he nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

### IV.   DISCUSSION

Here, Plaintiff alleges both (1) discrimination and (2) failure to accommodate under both the New Mexico Human Rights Act (NMHRA)[5] and Americans with Disabilities Act (ADA). Compl. ¶¶ 40-84. All of Plaintiff's claims arise from the same operative set of allegations recited above. Defendant argues that Plaintiff (1) fails to allege a qualifying disability for the purposes of the ADA or NMHRA and (2) fails to state cognizable claims of disability discrimination. ECF No. 10 at 2-6.

#### A.  Plaintiff Does Not Adequately Plead a Plausible Discrimination Claim

In Counts I and III, Plaintiff appears to claim that her termination was the result of disability-based discrimination. Compl. ¶¶ 40-48, 60-72.  The ADA prohibits discrimination against a "qualified individual on the basis of disability in regard to . . . [the] discharge of employees . . . ." 42 U.S.C. § 12112(a). To state a claim for discrimination under the ADA, a plaintiff must plausibly allege that they (1) are disabled within the meaning of the ADA, (2) are

---

[5] In interpreting cases under the NMHRA, New Mexico looks to federal law. *See Trujillo v. N. Rio Arriba Elec. Co-op, Inc.,* 41 P.3d 333, 338 (N.M. 2001). As such, the Court omits an explicit analysis of Plaintiff's NMHRA claims with the understanding that any such analysis would parallel the Court's disposition of Plaintiff's ADA claims. As Plaintiff fails to plausibly allege either discrimination or failure to accommodate under the ADA, so, too, do Plaintiff's NMHRA claims fail.

qualified for the job at issue, and (3) were discriminated against because of their disability. *See Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1218-19 (10th Cir. 2016).

To satisfy the first element of an ADA discrimination claim, a plaintiff must allege that they are disabled within the meaning of the ADA. The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The statute further defines "major life activities" to include "walking, standing, and lifting," and, most relevant for Plaintiff's purposes, "the operation of a major bodily function, including . . . functions of the immune system" and "normal cell growth . . . ." 42 U.S.C. § 12102(2)(B).

Plaintiff's Complaint plausibly alleges that she is disabled within the meaning of the ADA. Plaintiff claims, with notable specificity, that her Factor II mutation "impacts her immune system and normal cell growth." Compl. ¶ 18. This Court is cognizant of *Twombly*'s caution against pleadings advancing a mere "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. However, the Court also acknowledges the difficulty of pleading facts regarding events occurring at the microscopic level, such as cellular function (or lack thereof). Construing Plaintiff's Complaint in the light most favorable to her, the Court thus finds that Plaintiff's Complaint sufficiently alleges that she suffers from a disability under the ADA.

The second element of a discrimination claim requires a plaintiff to plausibly allege that they are qualified for the job at issue. *See Kilcrease*, 828 F.3d at 1218-19. Plaintiff's Complaint meets this burden. Indeed, the Complaint notes that Plaintiff had worked at Defendant's call center for more than a decade prior to her refusal to get vaccinated. Compl. ¶ 17.

The third element required for a discrimination claim to advance is tautological: a plaintiff must plausibly allege that they were discriminated against *because* of their disability. *See Kilcrease,* 828 F.3d at 1218-19. To satisfy this element, a plaintiff must plausibly allege that their disability was a determining factor in a defendant's decision to take adverse action against them. *See Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323-24 (10th Cir. 1997).

Here, Plaintiff's Complaint fails. Even read in the light most favorable to Plaintiff, the Complaint does not allege any facts supporting Plaintiff's conclusory assertion that she "was discriminated against by T-Mobile because of her disability." Compl. ¶ 68. Plaintiff does note that her disability was "well-documented," and that Defendant had received evidence of her disability. *Id*. ¶ 19. But Plaintiff never connects Defendant's knowledge of Plaintiff's disability to her eventual termination. On the contrary: Plaintiff expressly claims that she was fired for being unvaccinated "as per T-Mobile's policies," *id*. ¶ 38, policies which the Complaint notes applied to all employees regardless of disability status, *see id.* ¶ 20 ("In late 2021, T-Mobile informed [Plaintiff], as well as *all other employees* within the [call center], that in 2022 employees would start to return to the call center at least one day per week. In order to return to the call center, employees were mandated to receive the COVID-19 vaccine.") (emphasis added).

Devoid of factual support, Plaintiff's claims regarding Defendant's discriminatory behavior are exactly the kind of "allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Having alleged no facts that could plausibly support a finding that Plaintiff's firing was the result of disability discrimination, Counts I and III of Plaintiff's Complaint must be dismissed.

### B. Plaintiff Does Not Plead a Plausible Failure to Accommodate Claim

In Counts II and IV, Plaintiff alleges failure-to-accommodate claims under the NMHRA and ADA, respectively. Compl. ¶¶ 49-59, 73-84. Claims for failure-to-accommodate under the ADA are a subset of discrimination claims. 42 U.S.C. § 12112(b)(5)(A) (defining "discrimination," in relevant part, as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ."). Unlike claims for intentional discrimination, plaintiffs advancing failure-to-accommodate claims need not establish discriminatory intent to show that an action was taken on the basis of disability, because any failure to provide reasonable accommodations for a disability is necessarily because of disability. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018).

To state a claim for failure to accommodate under the ADA, a plaintiff must allege that (1) they are disabled, (2) they are otherwise qualified, and (3) that they requested a plausibly reasonable accommodation. *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 674 (10th Cir. 2021). As discussed *supra* in Section IV(A), Plaintiff has plausibly alleged she is both disabled within the meaning of the ADA and qualified for the relevant position. Having satisfied the first two elements for stating a failure-to-accommodate claim, Plaintiff must then allege that she made a reasonable request to accommodate her disability.

Typically, "[w]hether an accommodation is reasonable under the ADA is a mixed question of law and fact . . . .". *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050-51 (10th Cir. 2017). However, the Tenth Circuit has firmly established that requests to work remotely are not, as a matter of law, reasonable accommodations:

> [A]n employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation. Physical

attendance in the workplace is itself an essential function of most jobs, and an employee's request to work from home is, as a matter of law, unreasonable if the employer has decided that physical presence at the workplace is an essential function of the position.

*Id.* at 1051 (cleaned up).

As Plaintiff's Complaint makes clear, she "specifically requested that T-Mobile allow her a reasonable accommodation in the form of allowing her to continue to work from home . . .". Compl. ¶ 79. That request was denied. *Id.* ¶ 80. As a matter of law, however, requests to work from home that run counter to an employer's physical attendance policies do not constitute reasonable accommodations. *See Punt*, 862 F.3d at 1051. Defendant's denial of Plaintiff's request thus did not constitute a prohibited failure to accommodate and Counts II and IV must be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED**. It is **HEREBY ORDERED** that all claims against Defendant are **DISMISSED WITH PREJUDICE**.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE